310-0693, people of the state of Illinois, Kathleen Thomas-Arado v. Tyrell Jackson, appellant, Carrie Bryson. Ms. Bryson. Thank you, your honors. May it please the court, counsel, I'm Carrie Bryson. I represent Tyrell Jackson. This is the defendant's direct appeal from his conviction of first degree murder. It's the first time he's before this court, but it's actually the fourth time that this court has had the opportunity to consider this particular case. Your honors have already had three co-defendants come before the court on appeal. One of those co-defendants had his conviction affirmed. He had raised a suppression issue based on a statutory violation of a recording requirement. This court found that that was, if error at all, was harmless because the statement in question was cumulative of other properly admitted statements. Two other co-defendants, Courtney Mays and Sherrod Moore, had their convictions reversed and remanded, also on a suppression issue based on their arrest being made without probable cause and the subsequent statements they made being tainted by that unlawful arrest. The defendant comes before your honors also on a suppression issue, although on a separate basis. Here the arrest was okay. The statement was accurately recorded, the statement in question, and Miranda warnings were given. What's at issue here was the defendant's invocation of one of those rights under Miranda, specifically the right to remain silent, which he repeatedly invoked, and which his invocations were continuously frustrated by the detectives of the Naperville Police Department in this case. The state has argued that the invocations were not clear and were equivocal. Those invocations, the statements the defendant made during the interrogation, and the DVD recording of that is part of the record that's been filed in this court as Exhibit 5B, and the defendant says, I don't want to talk no more. And the officers say to him, listen, can I be done? And the officers go on. I already told you, I ain't got nothing else to say. And it goes on. And then a short time after that, I ain't got nothing else to say. And the interrogation continues, and then finally, can I be done talking? And they go, no, you can sit there and not say a word, but you're going to listen to us. They keep continuing on. The state hasn't really explained to me how the defendant, or to this court, how the defendant could have been more clear in those invocations. I don't want to talk no more. Even if he had said nothing else after that, that would have been a clear invocation of his right to remain silent. But he did say more. He continued to attempt to invoke that right, and those attempts were continually frustrated by the officers of the Naperville Police Department. And you're talking about the second interview now. In the first interview, he said the same thing, and those two officers recognized it for what it was, and it adhered to it. That interrogation immediately was halted, which is what would be required, and what should have happened in this case, in order for his right to remain silent, his invocation of that right to have been scrupulously honored, which is really the next step in an analysis of invoking the right to remain silent, is if you invoke, was that invocation scrupulously honored? Now, on that point, the state has not made any argument, apparently conceding on this record, that if those invocations were clear and unequivocal, that it was not scrupulously honored by the detectives involved in this case. From there, then, what's the remedy? Well, the remedy is suppression of the statements. And again, as to the bulk of what was said, the state has made no argument that suppression shouldn't occur if this court finds there was an invocation and that that invocation was not scrupulously honored. What the state does argue is that this phone call that the defendant was allowed to place to his mother in the midst of the interrogation, so he makes the oral statement, they let him make the call, and his side of that call is recorded. It's in an interrogation room. It's audio and video. You don't hear the other side of the phone conversation, but you hear his side. That's recorded. And then after that, he immediately makes a written statement. The state has argued that the call to the defendant's mom is separate from the oral confession and the written statement. And for purposes of clarity, I'll just refer to the call as the call. The state accuses the defense of lumping together this oral statement, phone call, and written statement. Really, it was the detectives of the Naperville Police Department who lumped this all together. It was really clear early on in the interrogation that the defendant's mother is very important to him. He wanted to talk to her. He kept asking to talk to her, and they kept telling him he couldn't talk to her. They went so far as to then use the defendant's mom as an agent, really, unbeknownst to her, but encouraging the defendant to tell the truth. Your mom would want you to tell the truth. Your mom would want you to confess. Your mom's going to love you no matter what. Your mom will respect you if you stand up and take responsibility. He keeps asking to talk to her. At one point, he's told, no, we'll call her. We can either tell her you're being a stand-up guy, and you've told us you've taken responsibility, or we'll call her and we'll show her all these pictures of the crime scene, and we'll tell her you were involved in this terrible offense, but they won't let him call. He asks again later to call, and they say, no, you can't call her. You haven't given us anything. So throughout this interrogation, they're using the defendant's mom to draw out his statement. And that phone call that he's allowed to then place, and they actually offer after he's confessed, you want to call your mom now? Do you want us to call or do you want to call? They dial the number. It's really the culmination of their interrogation strategy, that okay, now you've confessed. They reward the defendant by allowing him to call his mom and basically parrot back some of what he's told them. That call was part and parcel of the interrogation. It occurs right in the middle. There's no reason to extract that out as somehow separate from... At least in the phone call, nobody was asking him questions except maybe his mother. Perhaps. The detectives aren't. There's a recording of the phone call to a video of his side, and that's in the record. But they've set this up as this is... You get to talk to him. You've told us, they've been telling him, this is what your mom's going to want to hear. Your mom's going to respect you. They've set this up throughout. So to set it apart as separate, when it really is just kind of this peak of, okay, we've drawn out the statement by using the mom, now you have to repeat it to her. It's really part and parcel of the interrogation in this case. But if your honors find it is separate, then we need to look to whether it's attenuated from the constitutional violation that occurred in this case. And the right to remain silent, that violation led to the statement. Is this then call attenuated? Well, what do we look at? We look at proximity and time. Well, it's immediate. You can hear, they take him to a separate room only because of technical difficulties with the phone system in the room he's in. It's a walking next door. You can hear it's happening immediately. If you look at the times, it's an immediate walk next door and make the phone call. Look at whether there are any intervening circumstances. There are not any intervening circumstances. He makes a statement to the police. They offer to let him talk to his mom. He talks to his mom. Nothing occurs in the interim. The flagrance and purposefulness of the police misconduct in this case, and that would be the misconduct in violating his right to remain silent. It's a pretty obvious violation. They acted with a singular purpose, getting a confession in this case, continually frustrating the defendant's efforts to invoke his right to counsel. That weighs against finding of attenuation. And then whether new Miranda warnings were given is the fourth factor. Not his right to counsel, his right to remain silent. I'm sorry, his right to remain silent. I'm sorry, from his speaking. Yeah, and then whether new Miranda warnings were given is the fourth thing to look at. There were no new Miranda warnings before the call. The mom wasn't advised of what the Miranda rights were. Well, nobody was interrogating him during the phone call, really. The police aren't asking him questions. I still submit that it's the police action that sets this all up and leads to this repetition of the statement. So they may not be asking questions. It doesn't have to be questions to be interrogation or police. Well, and under your theory, even if they had re-Miranda-ized him, would it have made any difference? I don't think it would have made any difference. I mean, he has no reason to think that this is somehow separate from the interrogation. The defendant had no reason to think that to know that the earlier statement he made violated his rights and wouldn't have been admissible.  by repeating to his mom what they had been encouraging him to tell the detectives and what he had ultimately said to the detectives. So I don't think it would be enough to weigh this case the other way, that this statement was not attenuated, if indeed it is separate from the interrogation, the oral statement given during the actual detective to defendant interrogation. So without a finding of attenuation, and that's the state's burden, to show it's attenuated. They haven't discussed it in the briefs. They haven't argued that it was attenuated. But it is the state's burden. Let me answer this. Let's take a similar situation. Because this is interesting. And let's say instead of calling his mom, the police say, we know where you live. We're going to talk to the state's attorney. We'll be back with you. Let the guy walk out of the police station. Or if he walks out of the police station and there's a policeman standing over here and this guy, one of his friends is standing there, and the fellow walks out of the police station and tells his friend what had just happened, and that they basically make admissions. And then the policeman overhears it on the street three minutes after he walks out of the police headquarters. If somebody overhears that, is the same issue or different? I think it's a different issue. At that point, if the defendant is released, he's not in custody here. He's clearly still in custody of the police. That would be in, I think, a major intervening circumstance. You've been released from custody. So it's the release from custody. I think that would make a big difference in this sort of case. So the state hasn't argued attenuation. It is the state's burden. What is also the state's burden, then, is to show we maintain the statement should have been suppressed. State's burden to show it's harmless error, the advance to harmless error argument, sort of. But they really haven't accepted that burden. The cases they've cited to this court and the arguments they've made really fall along the lines of plain error analysis, which is different. Plain error would be if this issue had not been preserved. And in this case, it's fully preserved. There was a lengthy pretrial motion to suppress. It was followed through. There was a stipulated bench trial preserving the issue. It's a harmless error analysis. And it remains to be seen whether the state will accept that burden head on here today. Even if they do, the state can't meet the burden of showing this is harmless. I mean, this is the most damaging type of evidence that can be admitted against a defendant at a trial. A confession, his own words recorded, his own words written, his own words admitting to involvement in the offense. And in this case, it's particularly troubling because his own words were the only evidence placing him at that scene. There is other circumstantial evidence that was presented by way of stipulation. In the case of some of that evidence conflicting, and it's discussed at length in both our brief and the state's brief. But it really is the only evidence putting him at the scene and putting him as the shooter. Let me twist my hypothetical a little bit. Now, instead of having him call his mom and say, okay, confess, we're putting a holding cell back here. And there's another somebody in there charged with failure to do right or something else. And he's sitting there and he asks what happened. He says, well, I shot this guy and the police got him. Still in custody, and it's two minutes after he walks out of that statement. I think we might be looking at the proximity in time as a consideration. But, again, we don't have the police right there sitting in the room. I mean, here they're sitting in the room. They haven't been using this other cellmate as kind of an incentive to confess. And, oh, if you tell us what we want to know, we're going to put you in a cell with your friend. I mean, here they're using the mom all throughout this statement. And, again, in my reply brief I've quoted at length, pages six to eight, some of those statements. And I would encourage the court, if you haven't already, to watch the video. The mom is really the theme here. And they're consistently returning to that subject and trying to encourage him to confess so that he can talk to his mom and then let him repeat the statement. The police sit in the room with him during the call. They're present throughout the call to the mom. Tell them they can't leave. They place the call. They really initiate the call saying, okay, now you can call. You want to call. You want us to call. But now we'll get in touch with your mom. I don't think they would, in your hypothetical, be initiating a conversation between the defendant and the cellmate. There's not police involvement in that regard. They certainly wouldn't have been using another guy in a jail cell to induce the defendant to make the statement. And so I still submit that would be a factually different circumstance than what's here, whether it would play out as attenuated or not. I think it would be a fact. No question it's actually different. I just want to be analogous and if the result would be any different. Sure. This is all begin with the I'm done, I'm done. And they're like, well, you can be done, but you're going to listen to us. And that goes on for the 20 or 30 or 40 minutes. And then he's like, all right. And he makes the confession. And then they say, you're going to call your mom. And that all happens contemporaneously. It does. It's all just one big, long. There's no break in time. It's just he confesses, they let him make the call, and they bring him back to write the written statement. The state's trying to extract out this statement, the call to the mom, which is really bookended by this oral confession and this written statement that he makes that clearly violate his invocations of his right to remain silent. Back to the issue of harmless error. The state can't meet that burden in this case. This is very damaging evidence in light of what was left without this statement. And just briefly, also, we've raised a sentencing issue in the event that this court does not reverse the denial of the motion to suppress and remand, arguing that the court's seven-year sentence was excessive. Well, one way to find out for sure if it's harmless, I guess, if we agree with you, is to give them a chance to see if they can convict you without it. Yeah, absolutely. And that's exactly what we'd be asking this court to do. But in the event you don't, the seven-year sentence is a 21-year departure from what was recommended even by the state. That part of our argument the state has not addressed in their brief, and I submit that's a very strong indication of what the sentence appropriate range was. If you don't reverse and remand for neutrality, I ask that you at least consider reducing the sentence under your authority under Rule 615. Thank you, Ms. Brazen. Mr. Arado. Where to begin? Good morning, Your Honors. May it please the court, counsel. All right. To address certain issues first on, as far as a concession regarding the first interview, there wasn't any more questioning. So what difference does it make whether they stopped or they said, I don't want to talk anymore, and they stopped questioning them? That doesn't matter. It was a complete break. It's a red herring. It's an indicator that the language that was used was clear to the officers that he did not want to talk. That would seem to be the only significance of it. But it doesn't address the other actual officers in the actual interview. It's a completely separate interview broken off by time. So regardless of whether we addressed it in our brief or not, I don't think it's a concession that it was truly a saying. In fact, we discussed in our brief, we believe it's more along the lines of Aldridge, in which the defendant was saying similar statements. But even if this court were to say that this was a violation of his Miranda rights on Exhibit 5B, I think there's no question that 5C is a separate issue. Hawkins, the Illinois Supreme Court case, is right on point. The dad comes in after the police have interviewed this guy, has given him his statement. That statement is actually suppressed because it was a violation of his actually it's a statutory violation, but regardless, it's suppressed. But the statement made to the dad is not. The court says, look, this isn't a police interrogation. The dad comes in and says, what happened? And the guy confesses to the father. This is exactly the same situation. The dad or the mom is called on the phone. He doesn't have to say to his mom, oh, yeah, I did all this. I had the gun. We went through the rob room of his weed. And then he moved and I popped him, bang, bang, and he was dead. He didn't have to say that. He could have said, mom, I'm in jail because of murder, and could you get me an attorney? He could have stopped there. And all the questioning, as Justice Schmitt, you pointed out, was done by the mom. On the other hand, it's clear that he's responding to his mom's questions, not the police. The police are sitting there and the cops are there just reading the newspaper. He doesn't care what's going on. He probably does, but what he cares about is he's not asking questions. You're right. He's not involved at all in the interrogation, just as in Hawkins. In the U.S., the Illinois Supreme Court case controls this case. In Hawkins, was the father continually invoked in the process of the police talking with the suspect? There's no indication about what the discussion was previously, other than the fact that the parent was told about his rights and the fact that his parents were being called. So we don't know about the facts of that. Correct. But it's irrelevant whether mom was invoked in that, because it's not a continuation of the police interrogation, and that's the distinction. I guess it's a custodial interrogation where he's not free to leave. He's in that room. It goes back to both Sherrod and Morton, the two cases of the other three that we've decided. Was he told he was free to leave? What were the circumstances? Because he had made some statements that he's alleging. He said that he wanted to invoke his right to remain silent, and then with their statements, when they say, well, then listen to us and the things that are said that induce him to somehow make a confession. I know that you're saying it's unequivocal that there's no question, but there is some question. They never walk out of the room. They never put him in a cell and say, we're going to find you a phone and call your mom. There's never that break that always indicates, that always is what the state says, listen, there's a break. This now is not an interrogation or an interrogation technique. You can say, well, they didn't ask him any questions. They were letting him talk to his mom. Well, we have other cases where they say, we didn't ask any questions, but a witness or a suspect sat in a room for 22 hours and wasn't allowed anything and finally breaks and confesses, and we know that those, even though they're not questions asked and answered, asked by a police officer and answered by a suspect, have also been found to be coerced or to be suppressible. I think that at least indulge me and say for the sake of argument that we can say that there's still an interrogation going on. If we found that his invocation was clear of his right to remain silent, you're saying that there is no way that that could, while he's in that same room, that no one could say, based on Hawkins, that that is a suppressible statement to his mother. With all due respect, Your Honor, I will not indulge you. I cannot under Hawkins. The facts of this case are right on point. The fact is that more— So we know in Hawkins that they never left the room, that he was in the same interrogation room, that he made the same or very similar statements about his right to— that he wanted to not speak. Then they talked to him and said, you're going to listen to us and, you know, okay, now you can talk to your mom. Did they say those same things? Do we know that it's the same set of circumstances? Well, it doesn't matter because it's not a custodial or police interrogation. That's what the key is. The court said we don't care. So it's not a custodial? It's not because it's not— well, it's custodial in the sense that he's at the police station, but so was Hawkins. And yet it was the parent. It was a third-party, non-police agent. There's no indication in this record that mom was a police agent. And she's saying, well, he's using mom as an agent. She wasn't an agent at the time of the phone call. She's just asking what happened, which is exactly what Hawkins' dad did. Mr. Arado, did you agree with Ms. Bryson's description of the interrogation and the things that they were saying to him about the mother during the course of the interrogation? Yes, I agree that they did mention his mother and did those things, but it doesn't— May I suggest, then, that if they said the things that were represented as them saying, this is what your mother wants to hear. Your mother wants to know that you were a stand-up guy. Your mother wants to know that you came clean to the police. Didn't they set up the questions before they made the call? Again, Your Honor, even if they had set it up, it doesn't matter. The only Supreme Court has said it's not a police interrogation at that point. And that's the key to Miranda. And it's up to us, I think, to look at the facts of this case to determine whether we think that under those facts, this was still a police interrogation. Is that correct? You can make a decision along those lines, Your Honor, but I respectfully suggest that the Illinois Supreme Court would disagree with that, if that were the case. Well, it won't be the first time they disagree with it. But I guess I want to couch my question a little differently, because if we find that the statements made by the police were meant to induce his statement after his indication of his right to remain silent. So we say that the confession he makes to the police is wrong. That should be suppressed. We have the wrongful statements and the wrongful inducement by the police, and we know that when you suppress statements and evidence, it's fruit of the poisonous tree. How do we then separate the phone call to the mom that only happened because they sat there for 40 minutes and got this kid talking? Would he have made those same statements to his mother if that interview had ended like the first one? Well, I believe that quite possibly he would have. And the reason is that it happens all the time. Defendants go to jail and they start yapping to their buddy in the jail cell about what happened. But his mom is not in the jail cell with them. They make the phone call home saying those are recorded all the time at the jail and those are used against defendants. That's not what happened in this case. No. Don't deal with what happened in this case. Well, I'm responding to... What I'm saying is he says the same things to the second detectives that he says to the first ones. So if we find that that was him invoking his right to remain silent, how do we separate the fact that their conduct for that 40 minutes, if we do find that it's wrong, that then, based on what those statements were, that he makes these statements to his mom? We can't take that in a vacuum unless we find that it was all okay. Miranda is a prophylactic against police interrogation. She is not prophylactic against third parties asking questions of people and people giving responses. And that's the bottom line. As far as the other cases, Moore and Mays, those cases were completely different because those guys were arrested without probable cause. They were transported in handcuffs. They were brought to the police station. They spent 22 hours in the police station. There's no question here that Terrell Jackson was arrested with probable cause. They've not said that he's not. That's never been an issue. So he was being properly in custody. So Moore and Mays shouldn't even be brought into this, in my opinion. The fact that she raised them is really to suggest that there's improper activity by the police in general. I guess the issue that I'm getting to is I don't know how we can overcome that taint if we find it. I mean, if we find that once he invoked that right to remain silent, as our cases say, that, you know, that interrogation, those things should cease. If we find that that's what he invoked and none of that's, I mean, it's elite. You know, we have to find that they would have, you know, immediately called his mother on the phone and handed him the phone, which I don't think is what would have happened there. I think he would have probably gone to a holding cell. Well, Your Honor, what if Mom had come to the police station and walked into that room at that  You would suppress that as well, I would suggest. I mean, then we're talking about if, I don't know because we've got this 40 minutes. I'm really struggling. How do you then say, he would have done this anyway. It's like we would have found the pot anyway. I mean, that's where I'm really struggling. If his rights are violated, how we then say, well, it would have happened anyway. He would have, he was going to confess to his mom no matter what. There is no struggle because there is no police interrogation. That's the bottom line. I mean, if you can't, if he had, if you rule and find the defendant's argument proper, then you're going to have to say that any time a defendant is subject to long-term interrogation and then put into a jail cell and confesses to a jailmate. That's not what happened. That's not what happened. Or he calls his mother immediately thereafter and says it. Or mom comes and visits him in jail and immediately confesses. That's all going to have to be thrown out. And when you invoke your right to remain silent, you don't, you're not continuing to interrogate or you shouldn't be. But they weren't interrogated. And the law is, I mean, you can say that all the facts are that this was the same thing. The law is that they are separate. So don't focus on the facts, focus on the law. These are separate acts and separate issues. The fact that these, this is a Hawkins case and not a, not the cases cited by a defendant. We can, in your view, then it would be, we can suppress the confession to the police and, and go forward. And the state really should be in just as good a position. Correct. Correct. Mr. I want, first of all, to apologize to you and justice O'Brien for jumping in before. Do we have anything in the record that shows that the mother asked him any questions on the phone? It is, you cannot hear exactly what is being said, but there's responses. The responses that are made are, he says, he tells her he was going to tell, I was charged with murder. So someone lines up, I did tell the truth, which seems to be a response to a question. So regardless of whether it is, it's still a conversation with the third party, not a police agent. Okay. But if, if that's what he says, but I told the truth, but then if the statements are suppressed previously, then of what effect is the statement? I told the truth. Well, I suppose you could redact that portion of it, but the remainder of it, certainly all of his statements of, yeah, I was, we were going to Robin. We had weed. I was there. Gun went off. That would all be coming. Also the cases about attenuation, just briefly, they all involve a police reinterrogating the second time. There's nothing about a third parties involved, non agents. So we don't have to respond to attenuation because there is no issue of attenuation. It's those cases, Dennis and Russ, the other one are not on point. They're not relevant. Also the question about plain air. The only reason I cited that case is because it addresses close with closely balanced evidence. And we still assert it's a harmless error analysis. And for the reasons set forth in the brief, that's why we believe it is harmless error. But the only reason that case decided is because the court discussed what closely balanced evidence is. It's not because I'm thinking this is plain air. There are no other questions. Thank you. Your honors. I'd like the opportunity to talk about Hawkins a little bit. It's discussed in the reply brief at some length and why it's distinguishable. It doesn't have to be just the police asking questions for something to be interrogation. Third parties can be used to interrogate. And in this case, while the police didn't tell the mom she's being used to interrogate, she's being used to induce this statement. She's been used since he tried to invoke his right to remain silent. Since the detectives realized how important it was to him to have the opportunity to talk to his mom, throughout that statement, she's used by the police to induce this statement. And she's being used as a vehicle for him to repeat that statement. Well, let me, if instead of calling mom, while this interrogation with the police is going on, if somebody goes over and even a police officer goes down, calls mom, picks her up, brings her to the station, then at this stage of the game when they send her to be called, instead of doing that, then it said, well, your mom's here. And mom would have walked into the room. Do we have Hawkins? I think that's closer to what happened in Hawkins, but we still, then we don't know, like your question is, what really happened in Hawkins? Were they using the parents, the father specifically, throughout the interrogation and setting it up as, you know, you'll get to talk to her? Well, does that mean, is that really relevant? In other words, if there's no police in interrogation, if in Hawkins they say that, it's not an interrogation. It's the father, not the police. I think it is relevant, though, because it goes to, it doesn't have to just be interrogation if it's inducement by the police. I mean, Hawkins has language in it citing to another case, recently holding that if the statement's not induced by the police or an agent of the police, it's admissible. Well, this would be induced. Arguably in Hawkins, the statement to the dad was induced because the police had, they said, violated his rights in getting the confession first, and then the, and so, had that been, in other words, had that instead of his father coming into the room, had another different police officer come in and ask him some questions, even re-Mirandizing him, I think there would have been, I'm guessing the result would have been, no, there's no attenuation. It's the old can-out-of-the-bag case, and so there was no attenuation, and therefore it's no good. But because it's not a police agent, because they said the father's not a police officer, this is not police interrogation, ergo Miranda and the father. Well, I mean, they said he wasn't being used as an agent of the police, but I think that the facts here and the videotape really clearly shows that the mom is being used as an agent, just because she's not in on it doesn't mean they're not using her as an agent to get the statement from the defendant. And that was not an argument that is addressed in Hawkins. I think it makes this case very distinguishable from what happened in Hawkins. So she can be a police agent without ever knowing it? Absolutely. Absolutely, because the police are setting her up. Any authority where somebody's ever, there's no connection with the police that's been deemed by a court to be an agent of the police? I don't have any authority. I've never seen a case quite like this one where the interrogation that is recorded is so focused on making this statement to make someone else happy, making this statement. So would you agree that if we find that mom is an agent of the police, it would be the first court that you know of to ever say that? That would, at least at this stage, I'd say you couldn't turn something up, I guess, if we overturned every rock looking for a case. But I'm not aware of anything as I stand here before the court today. But I think the facts and the circumstances here are quite different from Hawkins. I don't think Hawkins controls, for the reasons we've argued both here today and in the briefs. Here the police also, and this is in Hawkins,  They make that finding in Hawkins. They did initiate the conversation with the mom here. Counselors, one minute. Thank you. They also, in Hawkins, say the father was not being used as an instrumentality of the police. Well, I think the record here would support a finding that the mom was being used as an instrumentality of the police. And so here the statement is induced by police action, even though it's made to the mom, and it is not separate from the interrogation in this case. It's part and parcel of what was happening throughout the interrogation. Unless the court has other questions, I would ask again to reverse my hand. Thank you, Ms. Bryson. Mr. Arado, thank you. And this matter will be taken under advisement. A written disposition will be issued. And right now the court will be...